14 F.3d 603
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Regina R. Hood (92-3532); Margaret E. Gibbs (92-3602,
92-3887); Larry J. Gibbs (92-3657); Ronnie T.
Gibbs (92-3659); Charles M. Nallie
(92-3979); Defendants-Appellants.
 Nos. 92-3532, 92-3602, 92-3659, 92-3887, 92-3979 and 92-3657.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1994.
 
 Before: KEITH, GUY, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal taken by several criminal defendants who either were convicted by a jury of or entered guilty pleas to various drug and related offenses. For the reasons set forth herein, we vacate Defendant Nallie's sentence and remand for resentencing, and affirm the convictions and sentences of the other defendants.
 
 
 2
 * It would be time-consuming and unnecessary to set out in detail the facts of this case, which gave rise to a ninety-one count indictment against twenty-five individuals. We therefore briefly summarize the facts, and when necessary to address a defendant's particular argument, we will give greater detail.
 
 
 3
 In 1989, members of the Organized Crime Drug Enforcement Task Force began investigating a large-scale drug operation involving the Gibbs extended family. After concluding that the Gibbs family was extremely surveillance-conscious and that standard investigatory techniques would most likely not be effective in uncovering the full extent of the Gibbs' criminal activity, federal agents applied for and received authorization under 18 U.S.C. Sec. 2518 for a wiretap on two phone numbers, one on a line at the Gibbs' residence at 716 Wilson Avenue in Columbus, Ohio, and one on a line going to 1584 Arlington Avenue, Columbus, Ohio. Defendant Margaret E. Gibbs was the owner of the house at 716 Wilson and she lived there with her husband, Thelbert, and her son, Defendant Ronnie T. Gibbs. Defendant Regina Hood (granddaughter of Margaret Gibbs) rented the residence at 1584 Arlington Avenue.
 
 
 4
 The wiretaps revealed that the Gibbs' residence was being used as headquarters for a cocaine and heroin conspiracy. The house received sometimes hundreds of phone calls a day and various drug transactions were arranged or discussed. During the course of the wiretap and subsequent investigation, agents discovered that one Leslie Green, aka "Uncle Lucky," was organizing shipments of cocaine and heroin from California for distribution in Columbus. Green distributed cocaine to Defendant Charles "Chuckie" Nallie, Ryan Hood (Defendant Regina Hood's brother), and Mario Gibbs (Defendant Larry Gibbs's son and Defendant Margaret Gibbs's grandson) for retail distribution; Green distributed heroin to Defendant Larry Gibbs, among others, for retail selling and personal consumption. Defendant Ronnie Gibbs was a courier for the conspiracy.
 
 
 5
 On August 28, 1991, a grand jury returned a ninety-one count sealed indictment against twenty-five individuals, including the defendants in this appeal. Defendants Regina Hood, Margaret Gibbs, Larry Gibbs, and Ronnie Gibbs were convicted by a jury of, among other things, conspiracy to possess with intent to distribute and to distribute controlled substances (a violation of 18 U.S.C. Sec. 841(a)(1)). Defendant Charles Nallie pleaded guilty midway through trial to the conspiracy charge and a money laundering count. Defendants then brought these appeals.
 
 II
 
 6
 Several defendants argue similar issues and for that reason we address the defendants' arguments by issue instead of by individual.
 
 A. Suppression of Wiretap Evidence
 
 7
 Regina Hood, Margaret Gibbs, Larry Gibbs, and Ronnie Gibbs argue that all evidence obtained by way of the two wiretaps should be suppressed because the wiretap warrant was unlawfully issued. They contend that the government, in its application for the warrant, failed to show (as statutorily required) that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. Sec. 2518(3)(c).
 
 
 8
 Defendants correctly point out that Sec. 2518(3)(c) adds a special requirement to the usual "probable cause" standard for the issuance of a warrant. In United States v. Lambert, 771 F.2d 83, 91 (6th Cir.), cert. denied, 474 U.S. 1034 (1985), a panel of this court summarized this requirement: "All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." Id. "[T]he government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." United States v. Alfano, 838 F.2d 158, 163 (6th Cir.), cert. denied, 488 U.S. 821 (1988). The requirement is simply to respect privacy and "to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.' " Id. (quoting United States v. Kahn, 415 U.S. 143, 153 n. 12 (1974)).
 
 
 9
 In a thirty-five page affidavit, two FBI agents satisfied these requirements. The affidavit set out the information obtained by analyzing pen registers installed on the two phone lines later tapped. This included hundreds of calls, including calls from 716 Wilson to 1584 Arlington, from 1584 Arlington to 716 Wilson, and from both residences to known and suspected drug dealers around the country. The affidavit included information about the drug conspiracy targeted and how the members of the conspiracy were extremely security-conscious, usually dealing only with family members or longtime friends. The affidavit included reference to six confidential witnesses or informants who believed that the conspirators were aware of possible law enforcement surveillance and were therefore unlikely to engage in criminal activity that could be observed by physical surveillance. The affidavit ruled out the possibility of personal interviews of suspected conspirators: "Interviews with drug dealers and their customers are generally not productive, because of the individual's typically well-grounded fear for his own physical safety and his fear of prosecution." The affidavit ruled out a grand jury investigation or search warrants on similarly well-reasoned and well-articulated bases. Despite defendants' complaint that the federal agents did not interview neighbors, did not conduct searches of their trash receptacles, did not contact all local law enforcement agencies to exhaust law enforcement information on the subjects of the investigation, and did not attempt spot surveillance, we find that the federal agents conducted sufficient preliminary investigation and sufficiently justified the inadequacy of other methods. We therefore reject the defendants' challenge to the wiretap evidence.
 
 
 10
 B. Suppression of Evidence Seized from 716 Wilson Avenue
 
 
 11
 Margaret Gibbs argues that just as the court should have suppressed the conversations obtained by way of the wiretaps, the evidence seized from her house should also be suppressed because it was discovered only through the use of the "illegal" wiretaps. She concedes, however, that "if the wiretaps were valid, then it follows that there was probable cause for the search warrant." Because we uphold the wiretap evidence and find no other basis for suppressing the evidence obtained from Margaret Gibbs's house in the search conducted pursuant to a lawful search warrant, we reject this assignment of error.
 
 
 12
 C. Request for Transcription of All Recorded Conversations
 
 
 13
 Regina Hood and Margaret Gibbs both argue that providing them with copies of the government's transcription of the relevant portions of the recorded wiretap conversations was insufficient to protect their rights to due process. They contend that the district court should have authorized the expenditure of funds sufficient to enable defense counsel to make their own transcriptions of the approximately 200 cassette tapes of the wiretaps.
 
 
 14
 We are not pointed to any authority for the proposition that due process requires that indigent defendants be afforded the financial means to have their own transcription of government recordings done. Instead, counsel argue that we should extend to wiretap evidence the well-established right of indigent defendants to have a transcript of prior proceedings made at government expense if it is reasonably necessary to present an effective defense at a subsequent proceeding. See 18 U.S.C. Sec. 3006A(e)(1); Britt v. North Carolina, 404 U.S. 226 (1971).
 
 
 15
 In some circumstances, an indigent defendant might have a right, under 18 U.S.C. Sec. 3006A(e)(1), to have transcribed any recordings intended to be used by the government. Here, however, defendants have not met the "necessary for adequate representation" requirement of that statute. First, the government provided defendants with the transcripts that had been previously made. Second, although the defendants assert that the government-produced transcripts were inadequate because they contained errors, the only two errors pointed to by the defendants are errors that the government brought out at trial on direct examination. Third, defendants point us to no untranscribed portions of the tapes that would have been of assistance to them. Finally, the court gave the defendants' proposed jury instruction on this issue, which instructed the jury that the transcripts were not evidence--the actual recordings were the evidence of the conversations. Without evidence that the errors were pervasive, that the government failed to bring the errors to the jury's attention, that cross-examination of the government witnesses on the issue of transcript correctness would be insufficient, or that transcription of previously untranscribed portions would be of substantial assistance to the defense, defendants cannot show that a transcription of their own was "necessary for adequate representation." Thus, this argument fails.
 
 
 16
 D. Refusal to Grant Judicial Immunity to Defense Witnesses Who Invoked Their Fifth Amendment Right against Self-Incrimination.
 
 
 17
 As part of her defense, Regina Hood called Leslie Green and Ryan Hood (her brother). Regina Hood asserts that she called each of them to testify to her lack of involvement in and knowledge of the conspiracy's activities. At the time they were called as witnesses, each had entered into a tentative plea agreement with the government, which had not yet been accepted by the court. When called, each asserted his Fifth Amendment right against self-incrimination and refused to testify on Regina Hood's behalf. Regina Hood then requested that the court require the government to grant the witnesses use immunity from prosecution. This request was denied. Hood then moved that the court sever her case from the others so that she could have her own trial after Ryan Hood and Leslie Green were sentenced and could testify on her behalf. This request was denied as well.
 
 
 18
 The issue of judicially mandated immunity from prosecution was fully discussed by this court in United States v. Pennell, 737 F.2d 521 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985). We noted the two types of theories that might support a district court grant of immunity: (1) prosecutorial misconduct or (2) testimony essential to an effective defense. See id. at 526. Regina Hood's argument falls into the second category. Her difficulty here is that in Pennell we squarely rejected the second theory in its entirety. While Pennell acknowledged that the Third Circuit has approved this second theory, it established the law of this circuit as rejecting such a view. The Pennell view was recently reaffirmed as the law of this circuit, see United States v. Mohney, 949 F.2d 1397 (6th Cir.1991), cert. denied, 112 S.Ct. 1940 (1992), and we must therefore reject Regina Hood's argument.
 
 
 19
 As to Regina Hood's suggestion that the district court abused its discretion in failing to grant her a severance midway through the trial, we reject this argument also. Regina Hood cites no authority for her view that she should have been granted a severance when the witnesses she called "took the Fifth," and we find no abuse of discretion in the court's refusal to grant her a separate trial to be held after her two witnesses had pleaded guilty and had been sentenced. Her argument might be more persuasive had she made an issue of this problem in her initial motion for severance, but she did not. We therefore uphold this ruling of the district court.
 
 E. Motion for Severance of Larry Gibbs
 
 20
 Larry Gibbs argues that his case should have been severed from those of the other cocaine-distributing defendants pursuant to Federal Rule of Criminal Procedure 14 because he was involved only in an unrelated heroin conspiracy, and the evidence of the "separate" cocaine conspiracy unduly prejudiced him.[1] The government concedes that Larry Gibbs's role was as a heroin distributor, but argues that it alleged before trial and proved at trial that the heroin distribution of which Larry Gibbs was a part was simply a component of the larger conspiracy.
 
 
 21
 "A motion for severance pursuant to Rule 14 is committed to the sound discretion of the trial court," United States v. Wirsing, 719 F.2d 859, 864 (6th Cir.1983), and we find no abuse of discretion here. As an alleged coconspirator, Larry Gibbs was properly joined pursuant to Federal Rule of Criminal Procedure 8(b). At trial, the government sought to prove and did prove that Larry Gibbs was a member of one large conspiracy that involved the distribution of both cocaine and heroin. The evidence showed that he received his heroin from Leslie Green (the cocaine supplier for the Gibbs family), that he called 716 Wilson when he needed more heroin or had payment to deliver, and that he discussed the conspiracy's cocaine activities with the other conspirators. The fact that Larry Gibbs dealt in smaller quantities of a drug that was a secondary focus of the conspiracy does not establish prejudicial joinder warranting reversal. We also find that there was no unfair prejudice from the admission of evidence of the cocaine side of the conspiracy, because the heroin transactions with which the government sought to prove Larry Gibbs's participation in the conspiracy were readily distinguishable from the cocaine transactions.
 
 
 22
 F. Larry Gibbs's Request for Jury Instruction on Multiple Conspiracies
 
 
 23
 Larry Gibbs objects to the district court's failure to give his requested pattern jury instruction on multiple conspiracies (which was taken from 2 Edward J. Devitt et al., Federal Jury Practice and Instructions Sec. 28.09 (1990)). He asserts that the instruction given by the court was inadequate in two respects: (1) "it did not clearly explain to the jury how to decide if a single conspiracy existed, i.e. whether there was a single overall plan," and (2) "it did not clearly tell the jury of their duty to acquit if they did not find a single overall conspiracy."
 
 
 24
 The district court's instruction was not fatally flawed. As to Larry Gibb's first claim of error, the court's instruction informed the jury as follows:
 
 
 25
 To convict the defendant of the conspiracy charge, the government must convince you beyond a reasonable doubt that the defendant was a member of the conspiracy charged in the Indictment.
 
 
 26
 ....
 
 
 27
 In determining whether there was a single or multiple conspiracies, you may consider the length of time the alleged conspiracy existed. A conspiracy may continue for long period [sic] of time and may include the performance of many transactions.
 
 
 28
 ....
 
 
 29
 A defendant may be liable as a conspirator even if his participation in the conspiracy was for a short period of time. Thus, the government does not have to prove that the defendant was a member of the conspiracy during the entire length of the conspiracy. Rather, the government must prove beyond a reasonable doubt that a conspiracy to distribute or possess with intent to distribute cocaine, cocaine base and/or heroin, as alleged in the Indictment did, in fact, exist, and that the defendant was a member of the conspiracy at some time between July 1, 1987, and August 28, 1991, in that he or she conspired or agreed with one or more other conspirators involved in the conspiracy alleged in the Indictment to carry out at least one of the objects of that conspiracy.
 
 
 30
 You may also consider the nature of the interaction between the activities engaged in by the alleged co-conspirators. The fact there may have been more than one subgroups operating in different places does not present [sic] the existence of a single conspiracy.
 
 
 31
 A single conspiracy may exist even though members of the conspiracy played different roles in the conspiracy or performed different acts in furtherance of the conspiracy. The fact that a conspiracy may have involved the distribution or possession with intent to distribute more than one kind of controlled substance would not necessarily mandate a finding of multiple conspiracies, but a [sic] simply one factor you may consider in determining whether there was one single conspiracy.
 
 
 32
 You may consider all of the above factors in determining whether the government has proved that there was an overall agreement or a common goal as alleged in Count 1 of the Indictment.
 
 
 33
 As to Larry Gibbs's second claim of error, the instruction informed the jury that
 
 
 34
 If the government fails to prove this, then you must find the defendant not guilty of the conspiracy charged, even if you find that he was a member of some other conspiracy.
 
 
 35
 Although an acceptable practice is to give the Devitt and Blackmar instruction requested, the district court's instruction sufficiently address both of Larry Gibbs's concerns, and we therefore reject his assignment of error.
 
 G. Margaret Gibbs's Motion for New Trial
 
 36
 Ten days after her sentencing, Margaret Gibbs moved for a new trial on grounds that newly discovered evidence established her innocence. This "newly discovered evidence" was two letters to the district court from Ryan Hood and Leslie Green, witnesses whom Margaret Gibbs called to testify on her behalf, but who asserted their rights against self-incrimination and refused to testify. Following their sentencing, these witnesses wrote to the district court and in their letters corroborated Margaret Gibbs's testimony that she was not a participant in the conspiracy and did not know about the conspiracy's illegal activities.
 
 
 37
 "Motions for a new trial based on newly discovered evidence are disfavored, and a trial court's determination that a new trial is not warranted will not be reversed absent a 'clear abuse of discretion.' " United States v. Hawkins, 969 F.2d 169, 175 (6th Cir.1992) (quoting United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986), cert. denied, 484 U.S. 859 (1987)), cert. denied, 113 S.Ct. 1021 (1993). A motion for a new trial based on newly discovered evidence need only be granted if the evidence
 
 
 38
 (1) was discovered only after trial,
 
 
 39
 (2) could not have been discovered earlier with due diligence,
 
 
 40
 (3) is material and not merely cumulative or impeaching, and
 
 
 41
 (4) would likely produce an acquittal if the case were retried.
 
 
 42
 United States v. Barlow, 693 F.2d 954, 966 (6th Cir.1982) (format altered), cert. denied, 461 U.S. 945 (1983).
 
 
 43
 Margaret Gibbs's first hurdle is establishing that the evidence offered by Ryan Hood and Leslie Green "was discovered only after trial." On its face, this evidence is not appropriately characterized as "discovered after trial," for Margaret Gibbs obviously knew previously about the testimony these witnesses could give, because she called them as witnesses at trial. And this is the view of several circuits. See, e.g., United States v. Lockett, 919 F.2d 585 (9th Cir.1990); United States v. DiBernardo, 880 F.2d 1216, 1225 (11th Cir.1989) ("newly available" evidence does not equal "newly discovered" evidence); United States v. Vergara, 714 F.2d 21 (5th Cir.1983); United States v. Jacobs, 475 F.2d 270, 286 n. 33 (2d Cir.), cert. denied, 414 U.S. 821 (1973); United States v. Carlin, 573 F.Supp. 44 (N.D.Ga.1983), aff'd, 734 F.2d 1480 (11th Cir.1984). In fact, except for the lone district court case cited to us, United States v. Guillette, 404 F.Supp. 1360 (D.Conn.1975), we have not found another case holding that testimony not previously available due to the witness's assertion of the Fifth Amendment is considered "discovered only after trial."
 
 
 44
 Even if Margaret Gibbs were able to satisfy the "discovered only after trial" requirement, she still cannot satisfy the fourth requirement that the evidence "would likely produce an acquittal if the case were retried." There was strong evidence of her knowledge of and assistance in the activities of the conspiracy, and if her own denial of guilt at trial was insufficient to convince the jurors of her innocence, it is unlikely that the exculpatory testimony of two convicted drug dealers would have convinced them. Cf. United States v. Hendrix, 752 F.2d 1226 (7th Cir.) (noting that allegedly newly discovered evidence consisted of unsworn statement of convicted codefendant and as such was not only inherently suspect but his criminal convictions would have made him easily impeachable), cert. denied, 471 U.S. 1021 (1985). We therefore hold that Margaret Gibbs's motion for a new trial was properly denied.
 
 H. Sentencing
 
 45
 Margaret Gibbs, Larry Gibbs, Ronnie Gibbs, and Charles Nallie each challenge the district court's calculation of the "relevant conduct" for purposes of sentencing. Margaret Gibbs and Charles Nallie challenge other components of their sentences as well.
 
 1. Determination of Relevant Conduct
 
 46
 The United States Sentencing Guidelines in effect at the time of the defendants' sentencing provided that the base offense level be determined on the basis of "the defendant's conduct or the conduct of coconspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable" to him, U.S.S.G. Sec. 2D1.4 commentary (n. 1) (1991), and
 
 
 47
 all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense,
 
 
 48
 U.S.S.G. Sec. 1B1.3(a)(1) (1991). Effective November 1, 1992 (after defendants' sentencing), the Guidelines provides that "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)" the guideline range is to be determined on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. Sec. 1B1.3(a)(1)(B).
 
 
 49
 A district court's determination of the quantity of drugs used to compute a defendant's sentence under the Guidelines may not be overturned on appeal unless clearly erroneous. United States v. Paulino, 935 F.2d 739, 756 (6th Cir.1991), cert. denied, 112 S.Ct. 315 (1991), and cert. denied, 112 S.Ct. 323 (1991), and cert. denied, 112 S.Ct. 660 (1991), and cert. denied, 112 S.Ct. 883 (1992). The clearly erroneous standard is not violated if the court relies on a reasonable estimate instead of an exact factual determination. United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 498 U.S. 906 (1990), and cert. denied, 498 U.S. 989 (1990), and cert. denied, 498 U.S. 990 (1990).
 
 
 50
 A panel of this court recently explained what is required of a district court in determining the relevant conduct of coconspirators:
 
 
 51
 A co-conspirator is not necessarily responsible for the total amount of cocaine involved in the conspiracy for purposes of establishing his base offense level. Rather, a participant is responsible for other conspirators' conduct only if that conduct was reasonably foreseeable to him and in furtherance of the execution of the jointly undertaken criminal activity. U.S.S.G. Sec. 1B1.3, comment. (n. 1) (1989)....
 
 
 52
 ....
 
 
 53
 ... However, foreseeability is only one of the limitations on the ability of the court to charge one participant in a conspiracy with the conduct of the other participants.... Another limitation on the court's ability to charge a defendant with the conduct of others is that the conduct must be in furtherance of the execution of the "jointly undertaken criminal activity."
 
 
 54
 ....
 
 
 55
 ... Application note 2 to section 1B1.3 (1992) states:
 
 
 56
 Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement).
 
 
 57
 (Emphasis added.)
 
 
 58
 United States v. Jenkins, 4 F.3d 1338, 1346-47 (6th Cir.1993). The Jenkins court went on to hold that because the district court had neither implicitly nor explicitly addressed the scope of a particular defendant's agreement, but had held him responsible for the total amount of cocaine in the conspiracy, which was 3000 times as much as he had personally sold, a remand was necessary so that the district court could address this matter. See id. at 1347.
 
 
 59
 With the Guidelines and the Jenkins case in mind, we move to a discussion of the individual defendant's sentences. And as did the Jenkins court, we too look to the 1992 amendment to the Guidelines as a clarification of the relevant conduct provisions. See id. at 1346.
 
 
 60
 a. Margaret Gibbs
 
 
 61
 As to Margaret Gibbs, her presentence report (PSR) recommended that she be held responsible for (1) the 500 grams of cocaine discussed by Leslie Green in conversations that took place over Margaret Gibbs's phone lines during the wiretap (March 20, 1991 to April 29, 1991), (2) the two five-kilogram shipments of cocaine arranged by Leslie Green and distributed by the conspiracy in February and March of 1991, (3) the six to eight kilograms distributed by the conspiracy in April 1991, (4) the seven ounces of heroin distributed by the conspiracy, and (5) an additional 1.2 kilograms of cocaine, based on a currency-to-drugs conversion of the money found in Margaret Gibbs's possession and the money she used to purchase vehicles for family members. This resulted in a base offense level of 34.
 
 
 62
 The court expressly adopted almost all of the findings of the PSR,[2] rejected as incredible Margaret Gibbs's testimony that she knew nothing about the conspiracy, and said "she was present during most of the time that her family members were there conducting their drug activities and she was well aware of them and she assisted and participated by doing a variety of things." In summary the court said that Margaret Gibbs was "the matriarch of this family" and that "[s]he provided the place where the conspirators met and she was aware of what was going on and actively assisted and she was the banker."
 
 
 63
 Margaret Gibbs challenges the finding of the district court as inappropriate "relevant conduct" determinations, but we conclude that the district court's findings were adequate and supported by the record. The court implicitly found that the general scope of Margaret Gibbs's agreement encompassed the aims of the conspiracy generally. She assisted the conspiracy in a variety of ways, and the court found that she knew what was going on. This is a sufficient finding that Margaret Gibbs's "jointly undertaken criminal activity" included the vast majority of the conspiracy's activities. Likewise, the district court committed no error in determining that Margaret Gibbs reasonably could have foreseen the transaction amounts noted above. Knowing that several of her family members were engaged in drug distribution and seeing the amount of money flowing among her primarily unemployed grandchildren, Margaret Gibbs should not have been surprised to discover the volume of drugs involved in the conspiracy. We therefore reject Margaret Gibbs's assignment of error.
 
 
 64
 b. Larry Gibbs
 
 
 65
 Larry Gibbs objects to the court's determination that he should be held responsible for the seven ounces of heroin supplied by Leslie Green and distributed by the conspiracy. Larry Gibbs argues that he only took quantities in grams and could not have foreseen that the conspiracy distributed seven ounces.
 
 
 66
 The district court rejected this argument. It found that Larry Gibbs's phone conversations, regular appearance at the particular heroin distribution locations, and his familiarity with the activities of the conspiracy established that he could have foreseen (if he did not actually know) that seven ounces would be distributed. The court declined to hold Larry Gibbs responsible for any of the cocaine or for certain portions of the heroin that were for distribution in another city.
 
 
 67
 We return to the Jenkins analysis. First, the record shows that the scope of Larry Gibbs's agreement in the conspiracy was to distribute small amounts of heroin from the 40 Winks and Capitol motels. He rented motel rooms with cash almost every day for a period of a few months for this purpose. Although he did not agree to be a part of the cocaine side of the conspiracy, he was actively involved in the use and distribution of heroin. Thus, the record supports the conclusion that scope of his agreement encompassed the heroin distribution undertaken by the heroin side of the conspiracy. Second, the amount assigned to Larry Gibbs (seven ounces) was reasonably foreseeable. Although the evidence showed that he only dealt in gram amounts, dealing in grams over a period of time such as he did could quickly add up to seven ounces. The district court carefully tailored Larry Gibbs's sentence to his relevant conduct (excluding all of the cocaine distributed by the other members of the conspiracy), and we uphold the district court's findings.
 
 
 68
 c. Ronnie Gibbs
 
 
 69
 The district court found Ronnie Gibbs responsible for the twenty-three kilograms of cocaine and ten ounces of heroin distributed by members of the conspiracy. Ronnie Gibbs objects that this finding is clearly erroneous, arguing that the district court simply assigned the full amount of drugs to him without specifically finding that that amount was reasonably foreseeable. We disagree.
 
 
 70
 The district court found that Ronnie Gibbs agreed to be a courier for the conspiracy. In that role he took at least four cross-country or interstate trips for drug-related purposes. He also apparently had several local duties, partly because he resided at 716 Wilson Avenue. This established that the scope of Ronnie Gibbs's jointly undertaken criminal activity encompassed the full extent of the conspiracy. Similarly, having been paid to make cross-country trips in aid of the conspiracy and having lived at the residence that was the center of operations for the conspiracy, Ronnie Gibbs can hardly argue that the distribution of twenty-three kilos of cocaine and ten ounces of heroin was not reasonably foreseeable. There was no error here.
 
 
 71
 d. Charles Nallie
 
 
 72
 Charles Nallie challenges the district court's finding that he should be held responsible for five to fifteen kilograms of cocaine (for an offense level of 32). Although he does not contest the fact that he did distribute 255 grams of cocaine for Green at one time and was aware that Mario Gibbs and Ryan Hood (his cousins) were distributing cocaine for Green, he contests the district court's findings that his relevant conduct should properly include the over five kilos of cocaine distributed by his coconspirators.
 
 
 73
 The district court's finding on the reasonable foreseeability issue is fully supported by the record. Charles Nallie bought several vehicles with proceeds that the court found to be from illegal drug sales, and he saw the amount of money being made by his cousins, whom he knew to be distributors for Green also. In light of Charles Nallie's several months' involvement in the conspiracy, it was not error for the court to conclude that Charles Nallie could have reasonably foreseen cocaine amounts of greater than five kilograms.
 
 
 74
 We must nevertheless remand Nallie's case for a limited purpose. Absent from the presentence report and the sentencing transcript is a finding, implicit or explicit, as to the scope of Nallie's jointly undertaken criminal activity. The court focused on the reasonable foreseeability component; for example the court said, "[E]ven though Mr. Nallie's personal involvement may have been less than the others, ... Mr. Nallie was very aware of what the others were doing. He was aware ...; he knew.... So, it was reasonably foreseeable to him that...." Statements such as these fail to address the scope of Nallie's jointly undertaken activity.
 
 
 75
 There was evidence that Nallie was relegated to a minor role as a distributor because of his inexperience and lack of sophistication, and Nallie may have only jointly undertaken to distribute something less than five to fifteen kilograms. We must therefore remand for the purpose of having the district court make a finding as to the scope of Nallie's jointly undertaken criminal activity. Depending on that finding, the court may need to recalculate Nallie's sentence. But because the evidence was overwhelming that Nallie could have foreseen the amount of cocaine with which he was assigned, the court need not revisit this issue on remand.[3]
 
 2. Margaret Gibbs's Other Contentions
 
 76
 Margaret Gibbs also contends that the court erred in denying her a four-level "minimal role" deduction pursuant to U.S.S.G. Sec. 3B1.2. The district court instead adopted the PSR's recommendation that Margaret Gibbs be given a two-level reduction for being a minor participant.
 
 
 77
 The district court finding is fully supported by the record. Although the government did not introduce any direct proof that Margaret Gibbs was involved in actual drug sales, the court found that Margaret Gibbs knew exactly what was going on and regularly aided the conspiracy. Such a finding is not clearly erroneous and forecloses the possibility that Margaret Gibbs should be given the "minimal participant" adjustment. See U.S.S.G. Sec. 3B1.2 commentary (nn. 1-2) ("It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment....").
 
 
 78
 3. Charles Nallie's Sentence for Money Laundering
 
 
 79
 Finally, Charles Nallie argues that the court erred in imposing a sixty month sentence for the money laundering conviction and the government does not contest this issue. The error, however, is of no import if on remand the district court finds that Nallie's jointly undertaken criminal activity means that he is responsible for over five kilograms, because the mandatory ten year minimum on the conspiracy charge will result in incarceration beyond the erroneous sixty month term, which is to be served concurrently. On the other hand, if the district court on remand determines Nallie's sentence on the conspiracy charge to be less than sixty months, it should correct the judgment to reflect the proper sentence on the money laundering charge.
 
 III
 
 80
 For the foregoing reasons, Charles Nallie's case is REMANDED for resentencing, and the convictions and sentences of all other defendants are AFFIRMED.
 
 
 
 [1]
 This was related to his defense strategy at trial: to confess involvement as a heroin distributor, but argue that he was not involved in any way with the overall conspiracy charged in the indictment. We note, however, that he does not assert that he was improperly joined pursuant to Federal Rule of Criminal Procedure 8(b), an argument distinct from his Rule 14 argument. Even if he had, we would reject his argument because Rule 8 permitted, at least as an initial matter, the district court to join all defendants charged with the single conspiracy alleged in count I of the indictment
 
 
 [2]
 The court rejected the PSR's finding on the cash-to-drugs conversion as possibly double counting. The court also adjusted the base offense level to include a one-kilogram transaction it believed the probation department had missed
 
 
 [3]
 Charles Nallie also alleges that a due process violation occurred when the court relied on evidence from Nallie's codefendants' trial at his sentencing. This claim is meritless. The testimony relied upon by the court was fairly summarized in Nallie's PSR, and therefore the court's reliance on it was permissible. See United States v. Notrangelo, 909 F.2d 363, 365 (9th Cir.1990)