RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0232p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT
_____

LARRY J. GIBBS,

        *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,

        *Respondent-Appellee.*

No. 09-3702

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
Nos. 91-00128-019; 97-00556—James L. Graham, District Judge;
Norah McCann King, Magistrate Judge.

Argued: July 26, 2011

Decided and Filed: August 24, 2011

Before: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

_____

#### COUNSEL

_____

**ARGUED:** Keith O'Korn, Westerville, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Keith O'Korn, Westerville, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

#### OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. Larry Gibbs was convicted of conspiracy to distribute heroin and sentenced as a career offender to thirty years' imprisonment. In 1997, he filed a petition for a writ of *habeas corpus* on the grounds that a prior state conviction for narcotics possession had been improperly assessed as a predicate trafficking offense under the federal sentencing guidelines. This court denied

his petition, finding that Gibbs's failure to raise this claim during his direct appeal constituted a procedural default. *Gibbs v. United States* (*Gibbs I*), 3 F. App'x 404 (6th Cir. 2001). Gibbs subsequently filed a motion to set aside this court's judgment pursuant to Federal Rule of Civil Procedure 60(b), claiming that his procedural default should be excused because (1) he is "actually innocent" of the sentence he received and (2) the claim he now pursues was previously unavailable during his direct appeal. The district court denied his Rule 60(b) motion. For reasons explained below, we affirm the district court's decision.

I.

This court has previously reviewed the underlying facts of Gibbs's conviction in *United States v. Hood*, 14 F.3d 603, 1994 WL 4723 (6th Cir. Jan. 6, 1994) (table). In 1989, a police investigation in Columbus, Ohio, uncovered evidence that Gibbs served as a retailer of heroin for a large-scale narcotics operation. *Id.* at *5. In 1991, a jury convicted Gibbs of conspiracy to possess heroin with the intent to distribute, in violation of 21 U.S.C. § 846(b)(1)(B)(i).

In the presentence report, the probation office classified Gibbs as a career offender under U.S.S.G. § 4B1.1. This classification was based on two prior state court convictions deemed predicate "controlled substance offenses" under U.S.S.G. § 4B1.2(b): one for drug trafficking in 1977 and another for heroin and cocaine possession in 1987. This classification accounted for a fourteen-level increase, and the probation office ultimately calculated a guidelines range of 360 months' to life imprisonment. Based on this calculation, the district court sentenced Gibbs to 360 months' imprisonment.[1] This court affirmed the district court's sentence in 1994. *Id.* at *10.

---

[1] The probation office calculated Gibbs's adjusted offense level to be 37 and his criminal history category to be VI. Had he not been classified as a career criminal, Gibbs argues that he would have received an offense level of 23 and a criminal history category of VI, corresponding to a guidelines range of 92 to 115 months' imprisonment.

In 1997, Gibbs applied for a writ of *habeas corpus* under 28 U.S.C. § 2255. In his application, he challenged the district court's decision to classify his 1987 state conviction as a predicate offense under U.S.S.G. § 4B1.2(b). Gibbs argued that in 1987 he had been convicted under Ohio Revised Code § 2925.03(A)(4), which only criminalized possession of narcotics and had no trafficking element.[2] Thus, Gibbs argued, his 1987 conviction did not qualify as a controlled substance offense under U.S.S.G. § 4B1.2(b). While he had not raised this argument on direct appeal, Gibbs claimed that he was excused from procedural default based on ineffective assistance from his trial counsel. The district court rejected this argument, and this court affirmed that decision in 2001. *Gibbs I*, 3 F. App'x at 406. The appellate panel found that Ohio Revised Code § 2925.03(A)(4) did in fact constitute a trafficking crime and was correctly deemed a controlled substance offense under U.S.S.G. § 4B1.2(b). *Id.* The court therefore concluded that counsel had committed no error in failing to raise an objection to the presentence report. *Id.*

Five years after *Gibbs I*, another panel of this court, this time in a published opinion, found that Ohio Revised Code § 2925.03(A)(4) did *not* constitute a controlled substance offense under U.S.S.G. § 4B1.2(b). *United States v. Montanez*, 442 F.3d 485, 494 (6th Cir. 2006). In reaching this conclusion, the panel opined that *Gibbs I* was "wrongly decided" and incorrectly relied on the title of the code, rather than the elements of the crime itself. *Id.* at 491–92. In light of the *Montanez* decision, Gibbs filed a motion under Federal Rule of Civil Procedure 60(b). The district court initially treated this motion as a successive petition and transferred the petition to this court, which denied the Rule 60(b) motion "insofar as [it] challenged the district court's prior dismissal of his ineffective assistance claim on the merits." *In re Gibbs* (*Gibbs II*), Nos. 07-3956, 97-00556, 2008 WL 2944699, at *3 (6th Cir. July 24, 2008). The panel, however, remanded the motion to the district court with instructions to consider it "insofar as the Rule 60(b) motion challenged the court's finding that his claim that he

---

[2]At the time of Gibbs's 1987 conviction, § 2925.03 read: "No person shall knowingly . . . [p]ossess a controlled substance in an amount equal to or exceeding the bulk amount, but in an amount less than three times that amount." Ohio Rev. Code Ann. § 2925.03(A)(4) (1984).

should not have been sentenced as a career offender was barred by an unexcused procedural default." *Id.* at *3.

On remand, the district court denied Gibbs's Rule 60(b) motion. It did not accept Gibbs's argument that his "claim—i.e., that he was improperly classified as a career offender—was so novel as to be unavailable at the time that he filed his appeal." The court also rejected Gibbs's claim that "his actual innocence of the designation as [a] career offender" should excuse his default. Gibbs now appeals this decision.

## II.

Gibbs acknowledges that he failed to raise his U.S.S.G. § 4B1.1 claim on direct appeal and that the claim is therefore procedurally defaulted. He offers two reasons, however, why his procedural default should be excused. First, he argues that he is "actually innocent" in the sense that he was incorrectly categorized as a career offender under U.S.S.G. § 4B1.1. Second, he claims that his underlying predicate-offense argument was unavailable to him at the time of his direct appeal. Pursuant to the Supreme Court's instruction in *Dretke v. Haley*, we address Gibbs's unavailability claim first. 541 U.S. 386, 393–94 (2004) ("[A] federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default.").

## A.

Gibbs alleges that his career offender claim was so novel at the time of his direct appeal that it was "unavailable" to him at that time. Because this argument is a type of "cause and prejudice" that might excuse Gibbs's procedural default, this court reviews the district court's decision *de novo*. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 836 (6th Cir. 2010).

The Supreme Court has recognized that "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Reed v. Ross*, 468

U.S. 1, 16 (1984)).  The novelty standard, however, is a high one: the petitioner's counsel must have had "no reasonable basis upon which to formulate" the question now raised.  *Reed*, 468 U.S. at 14.  In *Bousley*, the Supreme Court noted that reported cases involving challenges similar to that raised by the present petitioner evidence that the claim in question was not novel.  523 U.S. at 622–23.  This court has similarly held that "[a] claim may be held sufficiently novel when, at the time of its default, the legal tools, *i.e.*, case law, necessary to conceive and argue the claim were not yet in existence and available to counsel."  *Cvijetinovic*,  617 F.3d at 837 (internal quotation marks omitted).

As Gibbs acknowledges, around the time that his direct appeal was being adjudicated in this circuit, another district court was deciding the precise legal argument that Gibbs now claims was unavailable to him.  In *United States v. Foster*, a defendant objected to his career-offender classification on the grounds that "[Ohio Revised Code] § 2925.03(A)(4) falls short of the federal definition of a controlled substance offense."  28 F.3d 109, 1994 WL 201201, at *1 (9th Cir. May 23, 1994) (table).  Based on the timing of the decision, Gibbs argues that *Foster* could not have put his counsel on adequate notice that the predicate-offense argument was available to Gibbs.  Whether *Foster* itself could have served as notice is largely irrelevant, however; the fact that the same legal argument was being put forward to courts during Gibbs's direct appeal indicates that "the legal tools . . . necessary to conceive and argue the claim" existed.

In addition to *Foster*, multiple cases predating Gibbs's direct appeal involved defendants who challenged career-offender designations on the ground that prior state-court convictions were not "controlled substance offenses" as defined by §§ 4B1.1 and 4B1.2 of the sentencing guidelines.  *See, e.g.*, *United States v. Adkins*, 961 F.2d 173, 174 (11th Cir. 1992) (per curiam); *United States v. Gaitan*, 954 F.2d 1005, 1008 (5th Cir. 1992); *United States v. Galloway*, 937 F.2d 542, 549 (10th Cir. 1991) (upholding a defendant's challenge to his career-offender classification under U.S.S.G. § 4B1.1 on the grounds that "[o]ne of the predicate felonies cited by the district court was a prior state conviction for possession" and "did not contain an element of intent to manufacture, import, export, or distribute").  Although none of these cases dealt with the specific Ohio

statute Gibbs now challenges, the fact that parties had, prior to Gibbs's direct appeal, challenged offender classifications under U.S.S.G. § 4B1.1 further supports the conclusion that the requisite "legal tools" were available during Gibbs's direct appeal.

Because Gibbs's argument was available to him on direct appeal, he has not offered cause to excuse his procedural default.

B.

Gibbs also contends that he is excused from his procedural default because he is "actually innocent" of the sentence he received. *See Vanwinkle v. United States*, --- F.3d ---, 2011 WL 1775676, at *3 (6th Cir. May 11, 2011) (noting that "actual innocence" may excuse a procedural default). Specifically, Gibbs argues that this court's *Montanez* opinion establishes his "actual innocence of being a career offender." The government responds with two arguments: first, that the actual innocence doctrine does not apply in the noncapital sentencing context, and, second, that Gibbs is not, in fact, actually innocent.

1.

The "actual innocence" doctrine derives from the Supreme Court's "fundamental miscarriage of justice" exception to the procedural default rule. *Schlup v. Delo*, 513 U.S. 298, 321 (1995) ("To ensure that the fundamental miscarriage of justice exception would remain rare and would only be applied in the extraordinary case . . . this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence." (internal quotation marks omitted)). The Court has explained that, while the procedural default rule ordinarily applies for purposes of comity and finality, the bar should not be so absolute as to produce a "fundamental miscarriage of justice." *See Engle v. Isaac*, 456 U.S. 107, 135 (1982). Therefore, the Court has held that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). However, "actual innocence" is an extremely narrow exception, and "claims of

actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. Moreover, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

The full scope of the "actual innocence" doctrine remains unclear.[3] The Supreme Court has declined to decide whether a procedural default can be excused by a defendant "assert[ing] 'actual innocence' of a noncapital sentence." *Dretke v. Haley*, 541 U.S. 386, 388–89 (2004). Without Supreme Court guidance, the Courts of Appeals disagree over whether the actual innocence exception applies to noncapital sentencing cases.[4] This court has not yet issued a published opinion that addresses whether the actual innocence exception extends to noncapital sentences, but we have in two unpublished opinions rejected claims similar to that of Gibbs. *Flahardy v. United States*, 67 F.3d 299, 1995 WL 570925, at *2 (6th Cir. Sept. 27, 1995) (table) ("The actual innocence exception is not available . . . in the case of a challenge to a noncapital sentence."); *Black v. United States*, 61 F.3d 903, 1995 WL 445718, *2 (6th Cir. July 26, 1995) (table) (holding the actual innocence exception does not apply if the petitioner "claims only that he should have received a lesser sentence" and "does not claim that he is actually innocent of the offense of which he was convicted"). Because it is not necessary to resolve whether the "actual innocence" exception extends to the noncapital sentencing context, however, we do not address it squarely in this case.

---

[3]In both the capital and noncapital contexts, the Supreme Court has ruled that the actual innocence exception applies "when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the *conviction* of one who is actually innocent of the underlying offense." *Dretke v. Haley*, 541 U.S. 386, 388 (2004) (emphasis added); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) (noncapital); *Schlup*, 513 U.S. at 327–28 (capital). The Supreme Court has also held that actual innocence claims may be raised in the context of capital sentencing—that is, where the petitioner intends to show that she was actually ineligible for the death penalty under the relevant federal or state law. *Sawyer v. Whitley*, 505 U.S. 333, 347 (1992).

[4]At least three circuits hold that actual innocence does not excuse procedural defaults in the noncapital sentencing context. *Embrey v. Hershberger*, 131 F.3d 739, 740–41 (8th Cir. 1997) (*en banc*); *Hope v. United States*, 108 F.3d 119 (7th Cir. 1997); *United States v. Richards*, 5 F.3d 1369, 1371 (10th Cir. 1993) ("A person cannot be actually innocent of a noncapital sentence . . . ."). Three other circuits have permitted actual innocence arguments in noncapital sentencing cases if—as Gibbs does here—the petitioner is challenging her eligibility for application of a career offender or other habitual offender provision. *Haley v. Cockerell*, 306 F.3d 257 (5th Cir. 2002), *vacated sub nom. Dretke*, 541 U.S. at 388–89; *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 171 (2d Cir. 2000); *United States v. Mikalajunas*, 186 F.3d 490, 494–95 (4th Cir. 1999).

2.

Although presented as an "actual innocence" claim, Gibbs's real argument is that the district court miscalculated his offense level and criminal history under the federal sentencing guidelines. Even if the "actual innocence" exception applies in some noncapital sentencing contexts, we believe that the exception does not permit prisoners to raise claims about guidelines calculations in a collateral attack. For this reason, Gibbs cannot rely on "actual innocence" to excuse his earlier procedural default.

Our conclusion comes from the Supreme Court's own decisions involving "actual innocence." First, allowing defendants to raise such claims would be contrary to the Court's language limiting the exception to "extraordinary case[s]." *Schlup*, 513 U.S. at 321; *Murray*, 477 U.S. at 496. Challenges to guidelines calculations are omnipresent in our federal system, and we believe the Court did not intend for the "rare" exception of actual innocence, *Schlup*, 513 U.S. at 321, to permit such a common form of appeal.

Second, sentencing guidelines calculations do not affect a defendant's eligibility for a sentence, and cases that have previously considered "actual innocence" claims in the sentencing context are distinguishable. In *Sawyer v. Whitley*, for instance, the Supreme Court explained that, in the capital-sentencing context, the "actual innocence" inquiry "focus[es] on those elements that render a defendant eligible for the death penalty." 505 U.S. at 347. "[T]o show 'actual innocence'" in the sentencing context, the petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the . . . penalty under the applicable . . . law." *Id.* at 336. Based on *Sawyer*, courts that have permitted "actual innocence" claims in the noncapital sentencing context have focused on the same principle—eligibility for the sentence received. *See, e.g.*, *Spence*, 219 F.3d at 171 (focusing on whether "the defendant was actually ineligible" for the noncapital sentence imposed); *see also Dretke*, 541 U.S. at 398 (Stevens, J., dissenting) (arguing that "actual innocence" should apply in the noncapital sentencing context if a petitioner's "incarceration is unauthorized").

In federal sentencing cases, federal law authorizes an imprisonment range. While the sentencing guidelines are used as a starting point for determining where within the statutorily-set range a prisoner's sentence should fall, the guidelines themselves are advisory. *United States v. Booker*, 543 U.S. 220, 246 (2005); *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). A challenge to the sentencing court's guidelines calculation, therefore, only challenges the legal process used to sentence a defendant and does not raise an argument that the defendant is ineligible for the sentence she received. The Supreme Court did not intend the "actual innocence" exception to save such procedural claims. *See Sawyer*, 505 U.S. at 339 ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").[5]

Finally, the specific facts of this case only confirm to us that Gibbs is not entitled to relief. Based on his conviction for conspiracy to distribute heroin, federal law authorized a sentence between ten years and life imprisonment, and Gibbs's 360-month term of imprisonment was therefore statutorily authorized. 21 U.S.C. §§ 841(b)(1)(B), 846, 851. The sentencing court is charged with imposing a sentence "sufficient but not greater than necessary" within the statutory range to afford adequate deterrence, reflect the seriousness of the offense, and protect the public. *See* 18 U.S.C. § 3553(a). Gibbs's record reveals a long criminal history and involvement in a large-scale narcotics ring and suggests a longer sentence might be necessary to achieve these goals. And although Gibbs may have been convicted of a possession offense in 1987, the underlying facts indicate that he was involved in narcotics trafficking at the time. Given this evidence, Gibbs cannot clearly and convincingly establish that he was ineligible for the 360-month sentence he received. *See Sawyer*, 505 U.S. at 348 (noting a petitioner claiming actual innocence must show by "clear and convincing evidence that but for constitutional error, no reasonable juror would find him eligible for the . . . penalty under [the applicable] . . .

---

[5]Gibbs implicitly claims that his case is different because he was sentenced by a court that assumed the guidelines were mandatory. However, the Supreme Court has clarified that treating the guidelines as mandatory is a procedural mistake, not a substantive one. *Gall v. United States*, 552 U.S. 38, 51 (2007) (classifying a district court's "treating the Guidelines as mandatory" as a "procedural error"). Similarly, an improper calculation of a guidelines range is a procedural, and not substantive, error. *Id.* (classifying a district court's "improperly calculating . . . the Guidelines range" as a "procedural error"). Procedural errors like these only implicate legal, and not actual, innocence.

law").  Because a court could have reasonably believed a thirty-year sentence was appropriate in this case, even without considering Gibbs to be a career offender, Gibbs cannot rely on "actual innocence" to excuse his procedural default.  The district court was therefore correct to reject his claim.

III.

For the foregoing reasons, we affirm the decision of the district court.