WILLIAM BRYON LEONARD, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 21742

January 24, 1992                              824 P.2d 287

[Rehearing denied March 3, 1992]

*E. Sue Saunders,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, and *David Sarnowski,* Chief Criminal Deputy Attorney General, Carson City, for Respondent.

## OPINION

*Per Curiam:*

Appellant William Bryon Leonard challenges the judgment entered pursuant to jury verdict of first-degree murder and the sentence of death that followed. Leonard contends that both the individual and cumulative effect of specified trial error deprived him of a fair trial both in the guilt and sentencing phases of trial. We disagree and affirm.

### FACTS

On the evening of October 22, 1987, Leonard, a maximum security inmate in the Nevada State Prison (NSP), killed another inmate, Joseph Wright, by stabbing him twenty-one times with a steel shank. Although he received only superficial scratches on the inside of his arm during his attack on Wright, Leonard nevertheless insists that Wright's death resulted from an act of self-defense.

At trial, the jury found Leonard guilty of first-degree murder with the use of a deadly weapon, battery with the use of a deadly weapon by a prisoner in lawful custody or confinement, and possession of a dangerous weapon by a prisoner in lawful custody or confinement.

At the penalty phase of the trial, the State established that Leonard was previously convicted in Nevada for the stabbing murder of Russell Williams, and in Florida for the stabbing murder of Lawrence Dunn. Leonard also had been previously convicted in Nevada of battery with the use of a deadly weapon by a prisoner in lawful custody or confinement for attacking Michael Simms, another inmate. Leonard's attack on Simms was similar to his attack on Wright. Leonard's record also included a conviction of assault with the use of a deadly weapon and battery

with the use of a deadly weapon by an incarcerated person for an assault on a correctional officer.

At the conclusion of the penalty phase, the jury found two aggravating circumstances: (1) the murder was committed while Leonard was under sentence of imprisonment; and (2) the murder was committed by a person who had been previously convicted of other murders and felonies. NRS 200.033. The jury found two mitigating factors: (1) Wright had been a participant in Leonard's criminal conduct or consented to the act; and (2) Leonard's previous crimes were committed while Leonard was under the influence of drugs or alcohol. NRS 200.035. The jury unanimously set the penalty at death.

## DISCUSSION

Leonard initially contends that his attorney, James Wessel, had a conflict of interest which prejudiced Leonard's defense because Wessel represented another inmate, Don Hill, in a different matter. Hill received a favorable plea bargain on two pending charges in return for his deposition about Leonard's attack on Wright and information regarding an escape attempt by Leonard. Hill's deposition testimony regarding the Wright homicide was favorable to Leonard and supported Leonard's theory of self-defense. The State did not use Hill's testimony affirmatively at trial. Leonard was aware of and did not object to Wessel's representation of Hill, and no actual conflict between Leonard and Hill existed which would have affected Wessel's efforts on behalf of Leonard. "[T]he possibility of conflict is insufficient to impugn a criminal conviction. . . . [A] defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). Because no actual conflict of interest existed, Leonard's argument is without merit.

Leonard's next contention is that the district court judge was biased against him and erred by not recusing himself. Specifically, Leonard contends that the judge demonstrated bias by stating "Mr. Leonard is a dangerous person . . . [and] has been a control and discipline problem."

We conclude that the judge's statements do not demonstrate bias. Rather, the judge's statements demonstrate a realistic concern that Leonard posed a serious safety risk in court. Leonard had killed three people, battered others, threatened his attorney, and was nearly successful in escaping from prison. "[T]he burden is on the party asserting the challenge to establish sufficient factual grounds warranting disqualification." In re Petition to

Recall Dunleavy, 104 Nev. 784, 788, 769 P.2d 1271, 1273-74 (1988) (citing Ritter v. Bd. of Com'rs of Adam County, Etc., 637 P.2d 940, 946 (Wash. 1981)). We conclude that Leonard failed to establish any grounds necessitating the judge's disqualification.

Leonard also argues that his due process rights were violated because several security officers guarded him at the courthouse, and some of the jurors saw him being shackled and unshackled outside the courtroom. However, the record evidence demonstrated that the jury knew Leonard was an inmate at Nevada State Prison. "'No prejudice can result from seeing that which is already known.'" Shuman v. State, 94 Nev. 265, 272, 578 P.2d 1183, 1187 (1987) (quoting Estelle v. Williams, 425 U.S. 501, 507 (1976)). Therefore, Leonard was not unfairly prejudiced by the necessary security measures.

Leonard maintains that he was unfairly prejudiced because the district court admitted evidence of his escape attempt and other prior crimes at the penalty hearing. In determining admissibility, the court often must weigh the probative value of proffered evidence against the risk of unfair prejudice. *See* NRS 48.035(1). When evidence shows that "'incarceration will not deter the defendant from endangering others' lives, a prosecutor is entitled to ask the jury to draw that inference.'" Riley v. State, 107 Nev. 205, 219, 808 P.2d 551, 560 (1991) (quoting Haberstroh v. State, 105 Nev. 739, 741, 782 P.2d 1343, 1344 (1989)). Leonard's history of violent behavior and attempted escape provides a basis for fairly inferring that his incarceration will not deter him from endangering the lives of others. Therefore, Leonard was not unfairly prejudiced because the trial court allowed evidence of his escape attempt and prior crimes. Moreover, Nevada law allows a sentencing body to hear evidence of other crimes and reliable background information that will provide enlightenment concerning the defendant "as a whole person" in considering the imposition of sentence. Gallego v. State, 101 Nev. 782, 791, 711 P.2d 856, 862-63 (1985); NRS 175.552. There was no error.

Leonard also contends his trial was tainted by prejudicial prosecutorial misconduct related to characterizations, innuendos, and conclusions. The prosecutor's statement that Leonard did what he did because he "liked it" was improper. However, we conclude that the statement was harmless beyond a reasonable doubt. The defense attorney did not object, overwhelming evidence of Leonard's guilt exists, and the prosecutor's inappropriate comments did not contribute to the verdict. Under these

circumstances, this court will not interfere with the sentence because of prosecutorial misconduct. Pellegrini v. State, 104 Nev. 625, 628-29, 764 P.2d 484, 487 (1988). As to Leonard's other assignments of misconduct, we conclude that they are without merit.

Finally, Leonard argues that the cumulative impact of trial error mandates reversal and that the evidence against him was not overwhelming. We disagree. The State presented an overwhelming basis for the conviction and sentence through witnesses and medical and physical evidence.

The record evidence also supports the finding of aggravating circumstances essential to a sentence of death. NRS 177.055(2)(b). Additionally, the record supplies no basis for concluding that the sentence was imposed under the influence of passion, prejudice or any arbitrary factors. We also conclude that Leonard's sentence is not excessive when considering both the crime and the defendant. NRS 177.055(2)(c-d).

For the reasons specified above, we are persuaded that Leonard was fairly tried and sentenced. We therefore affirm the judgment of conviction entered pursuant to jury verdict, and the sentence of death.