The appellant, Jeffrey Eugene Riddle, was charged by separate indictments with assault in the third degree (CC-94-130) and with the unlawful possession of marihuana in the second degree (CC-94-131). Both charges, as well as a third charge of assault in the first degree (CC-94-128), stemmed from events that occurred on November 13, 1993.
On February 14-15, 1994, the appellant was tried before a jury on the first degree assault charge, which involved the beating of the appellant's 16-year-old stepdaughter. *Page 1016 
The jury convicted the appellant of the lesser included offense of assault in the third degree, and he was sentenced to one year in the county jail and was fined $500. That conviction was the subject of a separate appeal and was affirmed by this Court on December 2, 1994. Riddle v. State, 661 So.2d 274
(Ala.Cr.App. 1994).
On March 28, 1994, the appellant was tried on the third degree assault charge, which involved an attack on the appellant's neighbor, Billy Wright, and the unlawful possession charge, which was based on the seizure of a pipe containing marihuana residue during the search of the appellant incident to his arrest for the assault offenses. These cases were heard by a circuit judge, who, sitting without a jury, found the appellant guilty of both charges. The appellant was sentenced to 12 months in the county jail, was fined $1,000, and was ordered to pay $50 to the Crime Victims' Compensation Fund on each conviction. The sentences in these cases were ordered to be served consecutively to each other and to the sentence in the prior assault case (CC-94-128). The appellant was also ordered to pay restitution in the amount of $376.34 in the third degree assault case (CC-94-130).
The instant appeal is from the March 28 convictions (CC-94-130 and CC-94-131). In connection with this appeal, the appellant filed a motion requesting that this Court take judicial notice of the record in the appeal from the February 15 conviction (CC-94-128). Under appropriate circumstances, this Court may take judicial notice of its own records. SeeWesson v. State, 644 So.2d 1302, 1305 n. 2 (Ala.Cr.App. 1994);Ray v. State, 646 So.2d 161, 161 n. 1 (Ala.Cr.App. 1994); Hullv. State, 607 So.2d 369, 371 n. 1 (Ala.Cr.App. 1992). Because the present cases are connected to the case tried in February and because the record from the February 15 conviction is pertinent to two of the issues raised in the present appeal, we granted the appellant's motion.
 I
The appellant asserts that the trial court erred in denying his demand for a jury trial as untimely.
As noted above, the appellant was charged by separate indictments with third degree assault and second degree possession of marihuana. Both of these offenses are misdemeanors. Ala. Code 1975, § 13A-6-22(b), § 13A-12-214(b). Every defendant charged with a misdemeanor has a right to a jury trial, but that right may be exercised only by making a timely written demand for a jury trial. See § 15-14-30; Commentary to Rule 18.1, A.R.Crim.P. Section 15-14-30 "requires that a demand in writing be filed with the circuit court within thirty days of the [defendant's] arrest or being taken into custody, following indictment or within thirty days after the [defendant] has appealed his case from inferior court to circuit court." Tucker v. State, 398 So.2d 417, 419
(Ala.Cr.App. 1981). Section 15-14-30 specifically states: "A failure to demand in writing a trial by jury as provided in this section shall be held and deemed to be a waiver by the defendant of a trial by jury." § 15-14-30.
The indictments against the appellant were filed on January 10, 1994. C.R. 5, 21. The indictments disclose that bail was set at $1,000 for the assault charge and at $750 for the possession charge on January 11, 1994. Id. From this we can infer that the appellant was arrested upon the indictments no later than January 11, 1994. To be timely, his written demand for a jury trial must have been filed within 30 days of January 11, 1994, or no later than February 10, 1994. The written demand for a jury trial was not filed until February 17, 1994. C.R. 2, 18. The trial court was therefore correct in denying this demand as untimely.
The appellant asserts that these cases were placed on the jury trial docket, that he relied in good faith on that docket, and that, in essence, the trial court should have been estopped from denying his demand for a jury trial. To support this claim, the appellant has attached to his brief copies of "Index — Trial Docket, Lee County Circuit Court" and "Lee County Circuit Court Expanded Docket List by Q/Case," both of which are dated February 4, 1994. However, exhibits attached to a brief are not evidence and cannot be considered by this Court on *Page 1017 
appeal. Huff v. State, 596 So.2d 16, 19 (Ala.Cr.App. 1991). " 'This Court is bound by the record [on appeal] and may not consider asserted facts which cannot be ascertained [from] th[at] record.' " Bush v. State, 616 So.2d 394, 395
(Ala.Cr.App. 1993) (quoting Richie v. State, 481 So.2d 454, 455
(Ala.Cr.App. 1985)).
Additionally, we note that while trial counsel[1] maintained at the March 28 bench trial that he had understood that all of the cases would be tried together and that he "was never told that they would not be tried together until we arrived here on Monday morning [February 14] to try the case," there was no objection raised at the jury trial of the felony case (CC-94-128) to its being tried without the misdemeanor cases (CC-94-130 and CC-94-131). In fact, CC-94-130 and CC-94-131 were not even mentioned prior to the trial of CC-94-128. Defense counsel did make reference to a fourth charge against the appellant, which apparently involved the appellant's wife: "[T]he motion to suppress really was directed to what I presume would have been evidence on the case [involving] Mrs. Riddle, Genie Riddle, which I think would be moot now. It's my understanding that case is going to be not tried today [sic]." R. 13 (CR 93-1046). If anything, defense counsel appears to have acquiesced in the trial of the felony case separate from the trial of the misdemeanor cases.
 II
The appellant claims that the prosecution failed to adequately prove the chain of custody for the pipe found in his shirt pocket after his arrest for the assault charges and that, consequently, the trial court erred in admitting the pipe into evidence.
Opelika Police Officer James Grider testified that on November 13, 1993, he arrested the appellant at the scene of the assaults. Grider stated that while searching the appellant incident to this arrest, he found "a crude pipe" containing what he "believed to be residue of marihuana" in the appellant's shirt pocket. R. 42. He identified State's Exhibit 2 as the pipe he found in the appellant's pocket. Officer Grider stated that he took this pipe into his care and custody and that once back at the police station, he sealed the pipe in a plastic bag, labeled the bag with information regarding the appellant's case, and then placed the bag "into central evidence by locking it into a locker for the evidence technician." R. 45.
Sergeant Melvin Harrison testified that on November 15, 1993, he received the sealed bag from "central evidence," specifically from David Arwood, the "evidence technician at the Opelika Police Department." R. 50. He stated that the bag had a "seal-a-meal type seal across the side," R. 58, and that the seal was intact when he received the bag from Arwood and when he subsequently delivered the bag to Laura Shevlin at the Department of Forensic Sciences in Auburn. Harrison stated that he kept the sealed bag in his personal evidence locker, to which only he had access, after receiving it from Arwood and before delivering it to Shevlin on November 16.
Laura Shevlin, a toxicologist at the Department of Forensic Sciences, testified that she received the sealed bag from Sergeant Harrison on November 16, 1993. She stated that she placed a Department of Forensic Sciences case number on the bag and then placed the bag on Taylor Noggle's desk and locked Noggle's office.
Taylor Noggle, a Department of Forensic Sciences drug chemist, testified that he retrieved the "heat sealed" bag from his desk on November 17, 1993. R. 67. Noggle stated that he "took a pair of scissors" and cut the bag open without "damaging the original heat seal on the package." R. 68. He examined the pipe and ascertained that the residue on the pipe was that of marihuana. Noggle said that he then put the pipe back in the plastic bag and resealed the bag with tape. On November 24, 1993, he returned the bag to Sergeant Harrison.
Sergeant Harrison stated that he placed the bag in his personal evidence locker where it stayed until December 24, 1993, when Harrison, who was being transferred to another *Page 1018 
division, delivered the bag to Detective Aris Murphy. Harrison stated that the bag was in the same condition when he transferred it to Detective Murphy as it had been when he received it from Taylor Noggle. Detective Murphy stated that he placed the bag in his personal evidence locker where it stayed until he brought it to the trial. Murphy testified that the bag was in the same condition as it had been when he received it from Harrison.
The appellant asserts that the chain of custody is incomplete because David Arwood, the evidence technician at the Opelika Police Department, did not testify at trial. However, it was not necessary for Arwood to testify. As the Alabama Supreme Court has stated:
 "The chain of custody is composed of 'links.' A 'link' is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: '(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention, and (3) [the] safeguarding and handling of the item between receipt and disposition.' Imwinklereid, The Identification of Original, Real Evidence, 61 Mil. L. Rev. 145, 159 (1973).
 "If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a 'missing' link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the 'link,' as to one or more criteria or as to one or more links, the result is a 'weak' link. When the link is 'weak,' a question of credibility and weight is presented, not one of admissibility."
Ex parte Holton, 590 So.2d 918, 920 (Ala. 1991) (bracketed material added in Holton) (emphasis added).
In the present case, the State identified all of the links and established by direct evidence the three criteria for all of the links except Arwood. We are of the opinion, however, that the State offered sufficient circumstantial evidence to establish the three criteria for Arwood. Officer Grider locked the heat-sealed bag containing the pipe in a locker in "central evidence . . . for the evidence technician." Two days later, Sergeant Harrison received the bag, with the heat seal intact, from "central evidence," and specifically from Arwood, whom he identified as the evidence technician. There was absolutely nothing in the record to indicate that the bag had been tampered with while in "central evidence."
 "The purpose . . . of establishing a chain of custody is to satisfy the court that it is reasonably probable that the exhibit is authentic and that no one has altered or tampered with the proffered physical exhibit. . . . A chain of custody only need be proved to a reasonable probability. One need not negate remote possibilities of substitution, alteration, or tampering with proffered physical evidence in order to establish a proper chain of custody. . . . In essence, what must be shown to introduce physical evidence is that the proffered item is the same object and that it is in substantially the same condition as it was at the commencement of the chain."
J. Colquitt, Alabama Law of Evidence § 9.1(c) at 484 (1990) (footnotes omitted). See also Green v. Alabama Power Co.,597 So.2d 1325, 1328-29 (Ala. 1992); Ex parte Williams,548 So.2d 518, 520 (Ala. 1989).
The appellant also makes much of the fact that Laura Shevlin acknowledged on cross-examination that at least two and possibly three persons other than she and Noggle had keys to Noggle's office. However, the heat seal on the bag was intact when the bag was received by both Shevlin and Noggle, and there was no evidence that the bag had been tampered with while it was on Noggle's desk in his locked office. As we observed above, it is not necessary that the State negate every possibility of substitution or of tampering with the evidence. Here, as in Sistrunk v. State, 596 So.2d 644, 650 (Ala.Cr.App. 1992), *Page 1019 
"[t]he State proved to a reasonable probability that there had been no tampering with the evidence." The bag containing the pipe was properly admitted at trial.
 III
The appellant argues that the trial judge was biased against him and that, consequently, the judge erred in denying his motion to recuse filed prior to the bench trial of the misdemeanor offenses.
Canon 3.C(1)(a) of the Canons of Judicial Ethics provides that "[a] judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where . . . [h]e has a personal bias or prejudice concerning a party." However, a trial judge is presumed to be qualified and unbiased, Adkins v. State,600 So.2d 1054, 1062 (Ala.Cr.App. 1990), remanded on other grounds,600 So.2d 1067 (Ala. 1992), and "[t]he burden is upon the party requesting recusal to present evidence establishing the existence of bias or prejudice on the part of the judge,"Wright v. State, 628 So.2d 1071, 1073 (Ala.Cr.App. 1993). The bias or prejudice necessary to disqualify a judge " 'must stem from an extrajudicial source and must result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' " Kitchens v. Maye,623 So.2d 1082, 1086 (Ala. 1993) (quoting United States v. GrinnellCorp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778,793 (1966)) (emphasis added in Kitchens). A trial court's denial of a motion to recuse will not be reversed on appeal "unless clear evidence of bias is shown." Adkins v. State,600 So.2d at 1062.
The trial judge who presided at the bench trial on the misdemeanor charges (CC-94-130 and CC-94-131) in March was the same judge who had presided at the jury trial of the felony charge (CC-94-128) in February. The appellant's claim of bias and prejudice is based on the following remarks made by the trial judge to the appellant at the close of the jury trial:
(1) "You're a dangerous man." R. 212 (CR 93-1046).
 (2) "This is an outrageous situation where you beat up a little girl and an old man. Now, you're a thug and you need to be taken off the streets." Id.
 (3) "Now, you were convicted on a misdemeanor. You've dodged that felony bullet on this. . . ." R. 214 (CR 93-1046).
At the outset, we observe that all of the complained of remarks had their basis in the proceedings held before the trial judge. The evidence adduced at the jury trial clearly established that the appellant, without provocation, hit his stepdaughter on the head with a book bag, then struck her in the face with his fist, breaking her nose. The evidence at the jury trial also clearly established that the appellant struck Billy Wright, his neighbor, in the mouth with his fist, cutting Wright's mouth and damaging several of his teeth. Thus, the trial judge's comments that the appellant was "a dangerous man" and that he had "beat up a little girl and an old man," were fair assessments of the evidence,[2] rather than indications of bias. See Leonard v. State, 108 Nev. 79, 824 P.2d 287, 289
(trial judge's reference to defendant as "a dangerous person" and a "control and discipline problem" did not establish bias, where the remarks were supported by the record), cert. denied,505 U.S. 1224, 112 S.Ct. 3040, 120 L.Ed.2d 908 (1992); Marsh v.State, 418 So.2d 191, 192 (Ala.Cr.App. 1982) (trial judge's statement that "this was a senseless killing" made in chambers during plea negotiations did not establish bias).
The trial court's remark that the appellant was "a thug" was clearly a personal comment and would have been better left unsaid. However, while we do not condone the comment, we do not find it sufficient to establish the bias necessary to require the recusal of the trial judge. See Williams v. State,489 So.2d 690, 692 (Ala.Cr.App. 1986) (trial judge's remark, "Take that fool upstairs and to the county jail" did not require recusal). *Page 1020 
The third comment complained of — that the appellant had dodged the felony bullet — was merely "a judicial statement of the verdict and not any reflection of personal bias." Thomas v.State, 611 So.2d 416, 419 (Ala.Cr.App.), cert. denied,611 So.2d 420 (Ala. 1992). The appellant has failed to clearly establish that the trial judge was, in fact, biased or prejudiced against him.
The appellant also maintains that the trial judge's comment that he had "beat up . . . an old man" was an improper comment on the misdemeanor case that was not tried until more than a month after the jury trial.
Canon 3.A(6) of the Canons of Judicial Ethics provides: "A judge should abstain from public comment about a pending or impending proceeding in any court." As we noted above, the evidence adduced at the February trial included evidence of the appellant's attack on Billy Wright. In fact, Wright gave substantially the same testimony at the February jury trial as he did at the March bench trial. The better practice would, of course, have been for the trial court to refrain from commenting on the evidence concerning the case involving Wright, because that case had not yet been tried. However, this comment does not require us to reverse this case.
 "In situations where premature remarks are made, a red flag is raised in regard to potential bias on the part of the judge. In such a case, this Court must closely review the remarks and conduct of the trial judge to ensure that the accused was, in fact, accorded fairness in all stages of his trial."
Wright v. State, 628 So.2d at 1073. Our review of the remark and the record in the March bench trial lead us to conclude that the appellant did, in fact, receive a fair trial.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Trial counsel does not represent the appellant on appeal.
[2] Although the record does not disclose Mr. Wright's age, it does indicate that he was a veteran of World War II.