An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

WILLIAM BRYON LEONARD,
Appellant,
vs.
E.K. MCDANIEL, WARDEN,
Respondent.

No. 60337

**FILED**

OCT 2 2 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK



## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order dismissing a post-conviction petition for a writ of habeas corpus in a death penalty case. First Judicial District Court, Carson City; James Todd Russell, Judge.

In October 1987, while incarcerated for two prior murders, William Bryon Leonard stabbed fellow inmate Joseph Wright with a shank (prison-made weapon) 21 times, killing him. Leonard pursued a self-defense theory at trial, which the jury rejected, finding him guilty of first-degree murder with the use of a deadly weapon, battery with the use of a deadly weapon, and possession of a dangerous weapon by a prisoner in lawful custody or confinement and sentencing him to death. The district court elected not to sentence Leonard for the two remaining convictions. We affirmed the convictions and death sentence. *Leonard v. State*, 108 Nev. 79, 824 P.2d 287 (1992).

After unsuccessfully seeking state and federal post-conviction relief, Leonard filed this third state post-conviction petition on January 7, 2011; the State filed a motion to dismiss the petition on the ground that it was procedurally barred. The district court granted the State's motion and dismissed the petition. This appeal followed.

*Procedural default*

Leonard argues that the district court erroneously dismissed his post-conviction petition as procedurally barred. Because he filed his petition 19 years after this court resolved his direct appeal, the petition

15-32307

was untimely under NRS 34.726(1). The petition was also successive and therefore procedurally barred pursuant to NRS 34.810(1)(b)(2). To overcome the statutory procedural bars, Leonard must demonstrate good cause and prejudice. NRS 34.726(1); NRS 34.810(3). Although Leonard provides little in the way of good cause to excuse the procedural bars, he acknowledges that some claims raised here "bear a superficial resemblance to issues raised in previous proceedings" and thus appears to suggest that post-conviction counsel's ineffectiveness in investigating his case justifies reconsideration of his claims. However, Leonard cannot base a claim of good cause on the ineffective assistance of first post-conviction counsel because his first petition was filed prior to the effective date of the statute mandating the appointment of counsel for a first post-conviction habeas petition in a death penalty case, see NRS 34.820(1); 1991 Nev. Stat., ch. 44, §§ 32-33, at 92; *Mazzan v. Warden*, 112 Nev. 838, 841 n.1, 921 P.2d 920, 921 n.1 (1996), and therefore he did not have a right to the effective assistance of post-conviction counsel, see *Bejarano v. Warden*, 112 Nev. 1466, 1470 n.1, 929 P.2d 922, 925 n.1 (1996); *McKague v. Warden*, 112 Nev. 159, 165 n.5, 912 P.2d 255, 258 n.5 (1996). And he was not entitled to the effective assistance of second post-conviction counsel.[1]

---

[1]Additionally, Leonard argues that this court must reconsider its prior decision rejecting his conflict-of-interest claim against trial counsel, see *Leonard v. State*, 108 Nev. 79, 81, 824 P.2d 287, 289 (1992), in light of *Coleman v. State*, 109 Nev. 1, 846 P.2d 276 (1993). However, *Coleman* was decided 18 years before Leonard filed the instant post-conviction petition and he does not explain his delay in raising this claim and we reject his contention that *Coleman* establishes an exception to the law-of-the-case doctrine.

Leonard further asserts that his conviction and death sentence are constitutionally invalid because he was not tried before a fair tribunal; his

*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

Consequently, the ineffective assistance of post-conviction counsel cannot serve as good cause to overcome the procedural bars.[2] *Pellegrini v. State*, 117 Nev. 860, 887-88, 34 P.3d 519, 537-38 (2001); *Bejarano*, 112 Nev. at 1469, 929 P.2d at 925.

Leonard also argues that applying the procedural bars in his case is impermissible as "it would insulate meritorious constitutional claims of ineffective assistance of trial counsel from any substantive review." This explanation does not establish good cause. Leonard had the opportunity to assert such claims in a timely first post-conviction petition, and there is nothing impermissible or unconstitutional about the procedural bars themselves, *see generally Pellegrini*, 117 Nev. at 878, 34 P.3d at 531.

The State also pleaded laches pursuant to NRS 34.800. Under that provision, a petition may be dismissed if the delay in filing the petition prejudices the State. NRS 34.800(1). Because more than five years passed between the judgment of conviction or the decision on direct appeal and the filing of the petition, there was a rebuttable presumption of prejudice to the State. NRS 34.800(2). Leonard cannot overcome the

---

. . . *continued*

claim extends to his first post-conviction proceedings. Absent from his argument is any explanation for the delay in raising this claim; therefore, he has not demonstrated good cause to overcome the procedural bars.

[2]To the extent Leonard argues that the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012) serves as good cause to overcome the procedural bars, we have held that *Martinez* does not apply to Nevada's statutory post-conviction procedures. *Brown v. McDaniel*, 130 Nev., Adv. Op. 60, 331 P.3d 867, 871-72 (2014). Therefore, *Martinez* does not provide good cause for his late and successive petition.

presumption of prejudice under NRS 34.800(1)(a) because the claims were previously available. As to the presumption of prejudice under NRS 34.800(1)(b), as explained below, he has failed to demonstrate a fundamental miscarriage of justice.

*Actual innocence*

Where, as here, a petitioner cannot demonstrate good cause, the district court may nevertheless excuse a procedural bar if the petitioner demonstrates that failing to consider the petition would result in a fundamental miscarriage of justice. *Pellegrini,* 117 Nev. at 887, 34 P.3d at 537. A fundamental miscarriage of justice requires "a colorable showing" that the petitioner is "actually innocent of the crime or is ineligible for the death penalty." *Id.* When claiming actual innocence of the crime, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him absent a constitutional violation." *Id.* In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Mitchell v. State,* 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006) (internal quotations and citations omitted). Similarly, when claiming a fundamental miscarriage of justice based on ineligibility for the death penalty, the petitioner "must show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found him death eligible." *Pellegrini,* 117 Nev. at 887, 34 P.3d at 537.

Leonard argues that not considering the merits of his constitutional claims based on procedural grounds constitutes a

miscarriage of justice. Only two of Leonard's claims warrant brief discussion.[3]

### First-degree murder

Leonard asserts actual innocence of first-degree murder based on new mental health evidence that he claims establishes he was incapable of forming the necessary intent (premeditation or lying in wait) but that was not presented at trial due to counsel's ineffectiveness. We conclude that the new evidence does not satisfy the very narrow actual-innocence gateway to excuse the procedural bars that apply to the trial-counsel claim. *See Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) (observing that "actual innocence is an extremely narrow exception" to the application of procedural default rules) (internal quotation omitted). The evidence at trial showed that Leonard waited for an opportunity to attack Wright. Armed with a shank, he surreptitiously gained access to Wright's cell by rushing into his cell just as the prison guard closed the cell door, trapping Wright inside. Wright suffered 21 stab wounds from his head to his feet, with the fatal wound penetrating the pericardial sac of his heart; Leonard sustained superficial scratches. Although the new mental health evidence indicates that Leonard has poor impulse control and may react violently and uncontrollably when he feels threatened, intoxicated, or frightened, considering the trial evidence, Leonard has not established that it was more likely than not that no reasonable juror would convict him of first-degree murder.

---

[3]We further conclude that the district court did not err by denying his actual-innocence claims without conducting an evidentiary hearing.

*Death penalty*

Leonard also argues that new mitigation evidence establishes that he is actually innocent of the death penalty. We recently decided in *Lisle v. State*, 130 Nev., Adv. Op. 39 (2015) that "an actual-innocence inquiry in Nevada must focus on the objective factors that make a defendant eligible for the death penalty," that is, the aggravating circumstances. Therefore, a claim of actual innocence of the death penalty offered as a gateway to reach a procedurally defaulted claim cannot be grounded in new evidence of mitigating circumstances. *Id.*

Having considered Leonard's claims and concluded that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Hardesty

_____, J.          _____, J.
Parraguirre                  Douglas

_____, J.          _____, J.
Gibbons                      Pickering

CHERRY and SAITTA, JJ., dissenting:

We dissent. For the reasons expressed in our dissent in *Lisle v. State*, 131 Nev., Adv. Op. 39 (2015), we would reverse the judgment and remand this matter to the district court for an evidentiary hearing to determine the credibility of Leonard's new evidence of actual innocence.

Leonard presented new evidence that he was actually innocent of first-degree murder. This evidence consisted of statements and

evaluations from three mental health experts who opined that Leonard had poor impulse control, angered easily, and tended to over-react. Specifically, one expert opined that Leonard's "history of psychological trauma and abuse set him up to become hyper-vigilant and hyper-reactive in situations in which he feels threatened" and that hyper-vigilance in combination with his brain dysfunction resulted in an inability to formulate the intent to kill when he perceives threat. Another expert concluded that the combined effect of multiple pathological factors caused Leonard to inaccurately "perceive events and people," and he "irrationally perceived life-threatening situations and was unable to restrain his violent impulses." Leonard pursued a self-defense theory at trial. This new evidence would have gone a long way in sustaining that theory. While recognizing the gravity of the evidence presented at trial to support first-degree murder, we conclude that Leonard's new evidence justifies an evidentiary hearing to test its credibility.

Leonard also presented new mitigation evidence to demonstrate his actual innocence of the death penalty. As we observed in *Lisle*, eligibility for the death penalty in Nevada requires two findings by the jury: (1) at least one aggravating circumstance and (2) "that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances." *Id.*; *see* NRS 175.554(3). The plain language of the statute compels consideration of credible new mitigation evidence in an actual-innocence claim. Here, Leonard presented mitigation evidence illustrating his dysfunctional childhood, where he was subjected to neglectful, alcoholic parents and violence from his parents, stepfather, and other men. Not surprisingly, Leonard performed poorly in school and became involved with alcohol and drugs at a young age, often selling drugs for his father. This dysfunction and abuse led to Leonard

engaging in significant criminal activity. New mental health evidence suggested that, in his childhood, Leonard had been subjected to "severe abuse, neglect, head injuries, violence, environmental instability and pathological behavior by caretakers." As a result, he suffered from longstanding "major mental illness, impoverished inhibitory controls plus cognitive impairments and distortions or reality" that suppressed his ability to control and conform his behavior to social and legal standards. The evidence also showed that Leonard suffered from a variety of clinical disorders, borderline antisocial personality disorder, serial head trauma, and psychosocial stressors. If credible, the new mitigation material is clear and convincing evidence that Leonard is actually innocent of the death penalty. *See Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537) (2001) (observing the standard for a claim of actual innocence). We conclude that this new evidence demands an evidentiary hearing to determine its credibility.

_____, J.
Cherry

_____, J.
Saitta


cc:     Hon. James Todd Russell, District Judge
        Federal Public Defender/Las Vegas
        Attorney General/Carson City
        Attorney General/Las Vegas
        Carson City Clerk