IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| WILLIAM BRYON LEONARD,<br>Appellant,<br>vs.<br>WILLIAM A. GITTERE, WARDEN ELY<br>STATE PRISON; AND AARON D.<br>FORD, ATTORNEY GENERAL FOR<br>THE STATE OF NEVADA,<br>Respondents. | No. 79780 |

FILED

APR 09 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying appellant William Leonard's postconviction petition for a writ of habeas corpus. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Summary of factual and procedural history*

Leonard was in prison after having twice been convicted of murder when he attacked and stabbed to death fellow inmate Joseph Wright. A jury convicted Leonard of first-degree murder and two lesser offenses and sentenced him to death. This court affirmed his convictions and death sentence. *Leonard v. State (Leonard I)*, 108 Nev. 79, 824 P.2d 287 (1992). Leonard unsuccessfully sought state postconviction relief in three prior postconviction petitions. *See Leonard v. Warden (Leonard IV)*, Docket No. 60337 (Order of Affirmance, October 22, 2015); *Leonard v. State (Leonard III)*, Docket No. 50581 (Order of Affirmance, November 17, 2009); *Leonard v. State (Leonard II)*, 114 Nev. 639, 958 P.2d 1220 (1998). Leonard filed a fourth postconviction petition for a writ of habeas corpus, which the district court dismissed as procedurally barred. This appeal followed.

21-10278

*Procedural bars*

Leonard's petition was untimely, since he filed it more than 25 years after remittitur issued in his direct appeal. NRS 34.726(1)[1]. The petition was also successive because he had previously litigated a postconviction petition on the merits. NRS 34.810(2). And, it constituted an abuse of the writ because he raised new claims that could have been litigated in prior proceedings. NRS 34.810(1)(b)(2), (2).

To overcome the procedural bars, Leonard needed to demonstrate good cause and actual prejudice. NRS 34.726(1); NRS 34.810(1)(b)(2), (3). Because the petition was filed over five years after the remittitur issued on direct appeal and the State pleaded laches, NRS 34.800(2) imposes a rebuttable presumption of prejudice to the State. To overcome that presumption, Leonard also had to show that (1) "the petition is based upon grounds of which [he] could not have had knowledge by the exercise of reasonable diligence," NRS 34.800(1)(a), and (2) the failure to consider his claims would result in a fundamental miscarriage of justice, NRS 34.800(1)(b). In addition, any claims raised in the petition that have been addressed in prior appellate proceedings are subject to the doctrine of the law of the case, which generally precludes relitigation of those claims. *Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975).

---

[1]The petition was filed 24 years after the effective date of NRS 34.726. *See* 1991 Nev. Stat., ch. 44, § 33, at 92; *Pellegrini v. State*, 117 Nev. 860, 874-75, 34 P.3d 519, 529 (2001), *abrogated on other grounds by Rippo v. State*, 134 Nev. 411, 423 n.12, 423 P.3d 1084, 1097 n.12 (2018).

*Newly discovered evidence*

Leonard argues that newly discovered evidence about his trial counsel's gambling addiction, which he contends affected his counsel's judgment during trial, provides good cause to raise his claims of ineffective assistance of trial counsel on this, his fourth postconviction petition for habeas corpus.

Leonard failed to demonstrate good cause because the circumstances surrounding his counsel's gambling addiction were known during the litigation of his prior postconviction petitions. *See Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003) ("[T]o constitute adequate cause, the ineffective assistance of counsel claim itself must not be procedurally defaulted."). As early as 1990, criminal records, civil litigation, disciplinary records, and media reports noted trial counsel's gambling addiction and resultant embezzlement convictions. *See State Bar of Nev. v. Wessel*, Docket No. 20949 (Order of Disbarment, December 28, 1990); *State Bar of Nev. v. Wessel*, Docket No. 20949 (Order of Temporary Suspension, April 19, 1990). Trial counsel's gambling and theft were discussed in a deposition conducted during the litigation of Leonard's first postconviction petition. Accordingly, counsel's 2017 declaration did not provide good cause to excuse the delay in filing the current petition. Additionally, Leonard has no new allegations of good cause regarding co-counsel, who was responsible for the penalty phase of trial. Given the absence of good cause to excuse the untimely and successive petition, the district court did not err in dismissing it.

Leonard further failed to demonstrate actual prejudice. He argues that counsel should have argued that the killing occurred during mutual combat; presented evidence and argued that the guards had

arranged the fight; contested evidence linking Leonard to the murder weapon; and not permitted the State to depose Donald Hill. These allegations were insufficient to support a finding that counsel's performance fell below an objective standard of reasonableness. This court has already rejected Leonard's claims that counsel should have asserted a mutual combat defense or moved to dismiss or for a curative instruction about the lack of surveillance footage.[2] *Leonard II*, 114 Nev. at 649, 654-55, 958 P.2d at 1228, 1231-32. Leonard has not identified any additional evidence or avenues of investigation discovered since the earlier petitions that would have supported his claims. While Leonard's counsel also represented Hill, Leonard offers no basis on which his counsel could have prevented the State from deposing a cooperating witness and using that deposition during trial. *See* NRS 174.215(2) ("Any deposition may also be used by any party to contradict or impeach the testimony of the deponent as a witness."). Lastly, Leonard failed to demonstrate a reasonable possibility of a different result at trial had counsel pursued any of the identified lines of inquiry or actions given the overwhelming evidence of guilt. The evidence showed that Leonard hid outside of his cell and attacked Wright when his cell was opened. The comparative injuries each man sustained reasonably support the inference that Leonard was armed while Wright was not. And Leonard even gloated to nearby inmates.

---

[2]The current version of NRS 200.450(3) provides that a killing during mutual combat is punishable as first-degree murder. However, at the time of Wright's death, the statute only provided for a maximum sentence of ten years' imprisonment. *See* 1979 Nev. Stat., ch. 655, § 37, at 1427.

Leonard's penalty-phase trial-counsel claims also lack merit. This court concluded that testimony about Leonard's escape attempt was admissible, *Leonard I*, 108 Nev. at 82, 824 P.2d at 289-90, and that counsel did not act unreasonably by asking an inmate witness if he possessed a weapon and not introducing testimony about Leonard's childhood physical abuse, *Leonard II*, 114 Nev. at 657-58, 958 P.2d at 1233. Aside from trial counsel's own estimation of his effectiveness, Leonard offers no alternative basis for how counsel should have challenged the evidence nor has he shown that counsel's conduct was objectively unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 110 (2011) (recognizing that evaluation of counsel's performance "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind"). The record belies Leonard's claim that counsel did not seek out relevant psychological testimony, given that Leonard was evaluated before the penalty phase of trial and again during subsequent postconviction proceedings. Counsel need not "scour the globe on the off chance something will turn up" and "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Lastly, given the evidence introduced at the penalty hearing, Leonard failed to show a reasonable probability of a different result had counsel pursued additional mitigation evidence or challenged the State's evidence. The jury found two aggravating circumstances: the murder was committed while Leonard was under a sentence of imprisonment and Leonard had been convicted of other murders and violent felonies. *Leonard I*, 108 Nev. at 81, 824 P.2d at 289. These are compelling circumstances. Leonard killed two people before he was incarcerated and one person

thereafter, which showed his capacity for violence was unaffected by confinement. The proffered additional mitigating evidence, which related to early abuse and cognitive impairment, was not so compelling that it outweighed the aggravating circumstances and posed a significant risk of demonstrating that Leonard was unlikely to curb his violent impulses. *See Cullen v. Pinholster*, 563 U.S. 170, 201 (2011) (observing that evidence of a defendant's family substance abuse problems, mental illness, and criminal history was "by no means clearly mitigating, as the jury might have concluded that [defendant] was simply beyond rehabilitation"); *see also Lisle v. State*, 131 Nev. 356, 367, 351 P.3d 725, 733 (2015) (recognizing that "mitigation evidence can be a double-edged sword that may indicate diminished culpability but at the same time may indicate an increased risk of future dangerousness"). Accordingly, the district court did not err in denying these claims as procedurally barred.

*Retroactive application of Hurst v. Florida*

Leonard argues that a new rule of constitutional law announced in *Hurst v. Florida*, 577 U.S. 92 (2016), provides good cause to excuse his procedural default as to the first claim in his petition—that the district court should have instructed the jury that the weighing of aggravating and mitigating circumstances was subject to the beyond-a-reasonable-doubt standard of proof. We disagree. This court has rejected the argument that *Hurst* announced new law relevant to the weighing component of Nevada's death penalty procedures or to appellate reweighing. *Castillo v. State*, 135 Nev. 126, 129-30, 442 P.3d 558, 560-61 (2019); *Jeremias v. State*, 134 Nev. 46, 57-59, 412 P.3d 43, 53-54 (2018). Leonard's argument that *Castillo* contradicts prior United States Supreme Court decisions, namely *Andres v. United States*, 333 U.S. 740 (1948), and *Mullaney v. Wilbur*, 421 U.S. 684

SUPREME COURT
OF
NEVADA

(O) 1947A

6

(1975), lacks merit as the Supreme Court recently affirmed that *Hurst* "did not require jury weighing of aggravating and mitigating circumstances," *McKinney v. Arizona*, 140 S. Ct. 702, 707-08 (2020), which is consistent with this court's understanding of *Hurst* as expressed in *Castillo*. Accordingly, the district court did not err in rejecting *Hurst* as good cause for Leonard's untimely and successive petition.

*Constitutionality of the death penalty*

Leonard argues that Nevada's death penalty scheme is unconstitutional because the death penalty is imposed in an arbitrary and capricious manner, since Nevada law does not sufficiently narrow the class of defendants eligible for the death penalty, and the death penalty is invalid because clemency is unavailable.[3] Leonard does not assert any good cause to raise these claims in an untimely and successive petition. He also cannot demonstrate actual prejudice, given that this court has repeatedly rejected generalized arguments that Nevada law does not adequately narrow the class of defendants eligible for the death penalty. *See, e.g., Nunnery v. State*, 127 Nev. 749, 782-83, 263 P.3d 235, 257 (2011) (rejecting argument as to the narrowing of the class of defendants eligible for death and the availability of executive clemency); *Gallego v. State*, 117 Nev. 348, 370, 23 P.3d 227, 242 (2001) (rejecting argument as to cruel and unusual punishment), *abrogated on other grounds by Nunnery*, 127 Nev. at 770-72, 263 P.3d at 250-51; *Leonard v. State*, 117 Nev. 53, 82-83, 17 P.3d 397, 415-16 (2001) (rejecting argument as to the narrowing of the class of defendants

---

[3]Leonard's claim that the lethal injection protocol violates the prohibition against cruel and unusual punishment is not cognizable in a postconviction habeas petition. *McConnell v. State*, 125 Nev. 243, 248-49, 212 P.3d 307, 311 (2009).

eligible for death); *Shuman v. State*, 94 Nev. 265, 269, 578 P.2d 1183, 1186 (1978) (rejecting argument regarding cruel and unusual punishment). And contrary to Leonard's argument, Nevada law does allow death row inmates the possibility of clemency. *See Colwell v. State*, 112 Nev. 807, 812, 814-15, 919 P.2d 403, 406-08 (1996) (rejecting the idea that NRS 213.085 denies capital defendants a chance for clemency and explaining that the statute addresses one aspect of clemency). In fact, for death row inmates like Leonard who committed the capital offense before July 1, 1995, there are *no* limits on the availability of clemency. *See* NRS 213.085(1) (precluding the Pardons Board from commuting a person's death sentence to a sentence allowing for parole when that person was convicted of the offense on or after July 1, 1995); *Thomas v. State*, 120 Nev. 37, 44-45, 83 P.3d. 818, 823 (2004) (recognizing that the limitation in NRS 213.085 on commuting a death sentence to one that allows for parole does not apply to offenses committed before July 1, 1995). Accordingly, the district court did not err in denying these claims as procedurally barred.

*Cumulative error*

Leonard argues that the district court should have considered several claims that he had raised on direct appeal and in his prior petitions so that their cumulative effect would be considered with other claims for which he can demonstrate good cause to overcome the procedural bars. We disagree. Leonard cites no authority that requires the court to consider the cumulative effect of defaulted claims. The factual and legal bases for the claims he seeks to raise again were available either on direct appeal or during the prior postconviction proceedings, and he therefore cannot show that some impediment external to the defense prevented him from raising them before. *Hathaway*, 119 Nev. at 252, 71 P.3d at 506. More importantly,

Supreme Court
of
Nevada

(O) 1947A

8

the claims he raised in prior proceedings were rejected on the merits. Claims that this court has already rejected on the merits "cannot logically be used to support a cumulative error claim because we have already found there was no error to cumulate." *In re Reno*, 283 P.3d 1181, 1223-24 (Cal. 2012); *see also Rippo v. State*, 134 Nev. 411, 436, 423 P.3d 1084, 1107 (2018), *amended on denial of rehearing by Rippo v. State*, 432 P.3d 167 (2018). Therefore, Leonard has not demonstrated good cause to overcome the procedural bars or to avoid the law-of-the-case doctrine.

*Fundamental miscarriage of justice*

Leonard argues that failure to consider the merits of his petition would result in a fundamental miscarriage of justice because he is actually innocent. When a petitioner cannot demonstrate good cause, the district court may nonetheless excuse a procedural bar if the petitioner demonstrates that failure to consider the petition would result in a fundamental miscarriage of justice. *Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001), *abrogated on other grounds by Rippo*, 134 Nev. at 423 n.12, 423 P.3d at 1097 n.12. To claim a fundamental miscarriage of justice based on actual innocence of the crime, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of . . . new evidence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *see also House v. Bell*, 547 U.S. 518, 537 (2006) ("[A] gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" (quoting *Schlup*, 513 U.S. at 324)); *Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a

SUPREME COURT
OF
NEVADA

(O) 1947A

miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."); *Berry v. State*, 131 Nev. 957, 969, 363 P.3d 1148, 1156 (2015) (recognizing that actual innocence is a "demanding" standard that "permits review only in the extraordinary case" (internal quotation marks omitted)); *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537 (recognizing that petitioner shows a fundamental miscarriage of justice where he makes a "colorable showing he is actually innocent of the crime"); *Mazzan v. Warden*, 112 Nev. 838, 842, 921 P.2d 920, 922 (1996) (permitting review of procedurally barred claims when failure to consider them would result in a fundamental miscarriage of justice). In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006) (internal quotation marks and alteration omitted). When claiming a fundamental miscarriage of justice based on ineligibility for the death penalty, the petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him death eligible." *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537.

*Actual innocence of the crime*

Leonard asserts that no reasonable juror would have found him guilty of first-degree murder had they been presented with evidence that he killed Wright during mutual combat organized by the prison guards and was not capable of premeditation and deliberation due to cognitive dysfunction and his history of drug abuse. We disagree. Leonard does not allege any new evidence to support his claims but instead relies on evidence introduced at trial and with his prior postconviction petitions. This court determined that similar evidence presented with Leonard's third postconviction petition did not demonstrate that Leonard was actually innocent. *Leonard IV*, Docket No. 60337, Order of Affirmance at 4-5. The

SUPREME COURT
OF
NEVADA

(O) 1947A

law-of-the-case doctrine precludes further litigation of this actual innocence claim and "cannot be avoided by a more detailed and precisely focused argument." *Hall*, 91 Nev. at 316, 535 P.2d at 799. Leonard did not advance any argument why the law of the case should not be applied. *Cf. Hsu v. Cty. of Clark*, 123 Nev. 625, 630-31, 173 P.3d 724, 728-29 (2007) (discussing when the doctrine of the law of the case should not be applied). To the extent that the 2017 psychological assessment includes new evidence relevant to his intent, Leonard failed to demonstrate that no reasonable juror would have convicted him of first-degree murder had counsel introduced like testimony. The new evidence suggested that Leonard could overreact to perceived aggression, but no such aggression appears in the record. Instead, the evidence showed that Leonard surreptitiously remained on the cell tier and attacked Wright once his cell opened. Moreover, as the jury found sufficient evidence that Leonard lay in wait to kill Wright, he did not demonstrate that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.

### Actual innocence of the death penalty

Leonard argues that the verdict form rendered his death sentence invalid because it did not contain an option for a life sentence and therefore he is actually innocent of the death penalty. We disagree. A gateway claim that a petitioner is actually innocent of the death penalty must focus on the elements of the crime and the aggravating circumstances. *Lisle*, 131 Nev. at 367, 351 P.3d at 733-34. In contrast, Leonard's gateway innocence claim relates to the sentencing options included on a verdict form, and thus, he has not demonstrated actual innocence of the death penalty. Accordingly, Leonard did not demonstrate that the failure to consider his petition would result in a fundamental miscarriage of justice, and Leonard

failed to overcome the presumption of prejudice to the State as required by NRS 34.800.

Having considered Leonard's contentions and concluding that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____ C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering

_____, J.
Herndon

cc:    Hon. James Todd Russell, District Judge
       Federal Public Defender/Las Vegas
       Attorney General/Carson City
       Carson City Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A